IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Ranieri Partners, LLC,

        Plaintiff,

v.

Edith Vera,

        Defendant.

Case No. _____

15-cv-23601-Scola/Otazo-Reyes

FILED by AP D.C.

SEP 25 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

**PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Ranieri Partners, LLC, filing this Original Complaint against Defendant Edith Vera, (hereinafter "Defendant" or "appraiser") and for cause of action would respectfully show unto the Court as follows:

*Jurisdiction and Venue*

1. Plaintiff Ranieri Partners, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Uniondale, New York. Plaintiff Ranieri Partners LLC is a real estate investment firm founded in 2007. The founding member of Ranieria LLC is a citizen of New York.

2. Defendant is a citizen of Florida whose principal place of business is in Miami-Dade County, FL.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of a different state than Defendant, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), excluding interest and attorney's fees.

4. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## *Service of Complaint*

5. Defendant may be served with Complaint at 15827 SW 139th Street, Miami, FL 33196, or wherever Defendant may be found.

## *Background*

6. Defendant conducted an Appraisal ("appraisal") of Real Property located at 13125 Pinyon Drive, Clermont, FL 34711 ("Real Property").

7. That appraisal was the primary basis for Exclusive Lender, 31 SE Street, Suite 314 Miami, Florida ("Lender"), to approve and provide funding for a loan on such Real Property in the amount of approximately $ 281,000.00.

8. The appraisal done by Defendant was in the amount of $ 325,000.00.

9. The value at the time of the Appraisal of the Real Property was significantly less than $ 325,000.00.

10. The Defendant had actual knowledge at the time of the Appraisal of the Real Property was done that the appraisal was grossly inaccurate, and further was being relied upon by said Lender to approve and fund the loan on the Real Property.

11. Had the appraisal been for the accurate value of the Real Property, the Lender would not have approved or funded said loan.

12. Due to the grossly inaccurate appraisal, Lender and/or its assigns was damaged in

the amount of $198,241.00 (original loan amount minus gross proceeds).

13. The Real Property was subsequently liquidated for a loss on June 8, 2011.

14. Due to the grossly inaccurate appraisal, the funds received from the foreclosure were insufficient and the balance of the loan remains due and owing, for which Plaintiff seeks judgment in the full amount of said loan.

15. Plaintiff was assigned all rights regarding the actions of the appraiser, including the right of the Lender or its assigns to bring this action.

16. Plaintiff is the owner and holder of the underlying obligation for which the above-described appraisal was issued, and is the successor in interest of both the equitable and legal interest in the underlying obligation and the appraisal upon which this action is based.

17. Plaintiff discovered potential errors in the appraisal during an initial quality control review conducted on or about June 17, 2014.

18. Based upon the foregoing Plaintiff now brings this action.

19. The Uniform Standards of Professional Appraisal Practice ("USPAP") includes the following standards:

a. An appraiser must perform assignment ethically and competently, in accordance with USPAP and any supplemental standards agreed to by the appraiser in accepting the assignment… An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interest.

b. An appraiser must not accept an assignment that includes the reporting of predetermined opinions and conclusions.

c. Standards Rule 1-1 (c). The appraiser must not render appraisal services in a careless or negligent manner, such as by making a series of errors, that, although individually might not significantly affect the result of an appraisal, in the aggregate affects the credibility of those results.

d. Standards Rule 1-4. Based on the type of valuation method used, the appraiser must collect, verify, and analyze all information necessary for credible assignment results.

e. Standards Rule 3. In performing an appraisal review assignment, an appraiser acting as reviewer must develop and report a credible opinion as to the quality of another appraiser's work and clearly disclose the scope of work performed.

f. Standards Rule 3-1(d)-(g). In developing an appraisal review, the reviewer: (d) must develop an opinion as the completeness of the material under review given the reviewer's scope of work; (e) develop an opinion as to the apparent adequacy and relevance of the date and the and the propriety of any adjustments to the date given the reviewer's scope of work; (f) develop an opinion as to the appropriateness of the appraisal methods and techniques used and develop reasons for any disagreement given the reviewer's scope of work; and (g) develop an opinion as to whether the analyses, opinions, and conclusion are appropriate and reasonable and develop reasons for any disagreement.

20. Many federal statutes and regulations incorporate USPAP directly. For example, 12 C.F.R. § 564.4(a) requires that all appraisals conform to generally accepted appraisal standards as evidenced by USPAP. Section 1110 of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 3339, likewise requires that real estate appraisals be performed according to certain minimum standards, which include those identified under 12 C.F.R. § 564.4. See also 61 Fla. Admin. Code 61J1-9.001.

21. In addition to standards established in USPAP, the Freddie Mac Single-Family Seller/Service Guide ("Freddie Mac Guide") identifies unacceptable appraisal practices. Some of the unacceptable practice in the Freddie Mac Guide are:

a. It is unacceptable to include inaccurate or incomplete data about the subject property, the neighborhood or any comparable sale used in the appraisal analysis.

b. It is unacceptable to rely on inappropriate comparable sales or to fail to use comparable sales that are more similar to or geographically closer to the subject property without adequate explanation.

c. It is unacceptable to use inordinate adjustments for differences between the subject property and comparable sales that do not reflect the market's reaction to such

differences, or fail to make proper adjustments when clearly necessary.

22. The appraisal provided or approved by Defendant contains specific representations regarding compliance with these standards, including the following representations:

a. The appraiser, at a minimum, developed and reported the appraisal in accordance with the scope of work requirements stated in the report;

b. The appraiser performed a complete visual inspection of the interior and exterior areas of the subject property. The appraiser reported the condition of the improvements in factual, specific terms. The appraiser identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property;

c. The appraiser performed this appraisal in accordance with the requirements of the USPAP;

d. The appraiser developed his opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. The appraiser used adequate comparable market data to develop a reliable sales comparison approach for this assignment;

e. The appraiser researched, verified, analyzed, and reported the prior sales of the comparable sales for the minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in the report;

f. The appraiser selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property and the comparable sales;

g. The appraiser verified, from a disinterested source, all information in this report that was provided by the parties;

h. The appraiser represented that he was aware of, and had access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area where the property is located;

i. The appraiser has taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of his opinion of market value. The appraiser has noted in this appraisal report any adverse conditions observed during the

inspection of the subject property or that the appraiser became aware of during the research involved in performing this appraisal. The appraiser has considered these adverse conditions in the analysis of the property value, and has reported the effect of the conditions on the value and marketability of the subject property; and

j. The appraiser represented that any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

23. Defendant failed to comply with the above referenced guidelines and statutes. The appraisal of the Defendant contains certain deficiencies regarding the fair market value of the real property in the appraisal made the basis of this action. The areas which contain deficiencies include, but are not limited to, failure to create the proper "scope of work"; failure in notifying the client of limited or lack of expertise for an assignment; incomplete research of the subject property; reliance on only one data collection source for comparable properties; failure to properly explain adjustments and/or final reconciliation; failure to properly identify the highest and best use issues; incomplete work files/unsigned certifications; and a lack of geographical competency.

24. These violations of USPAP and applicable industry standards indicate that the appraiser was most likely intentionally and knowingly trying to support an inflated value, but at a minimum indicate gross incompetence. The borrower defaulted on the loan and deficiency balance was charged back.

25. Such actions form the basis of this Complaint, upon which Plaintiff brings this action.

### *Causes of Action*

### COUNT 1: *Breach of Contract*

26. Plaintiff adopts and incorporates by reference all of the above allegations, and further avers as follows:

27. Defendant provided the appraisal upon which this action is based, and upon which the underlying obligation was originated. As set forth above, Defendant and Plaintiff's Predecessor, from whom Plaintiff acquired all right, title and interest in such claims and causes of action, entered into an appraisal contract, which was founded upon a written instrument.

28. Plaintiff's Predecessor fully performed under the terms and conditions of the contract, including paying the agreed upon fee for the appraisal service. Defendant has materially failed to comply with its own obligations under the appraisal contract and is liable to Plaintiff for damages directly caused by reliance upon the appraisal services that were not in compliance with the representations and agreements under the terms of the contact.

29. Defendant breached the appraisal contract by, among other things, (i) failing to provide an appraisal and appraisal services that were prepared by Defendant with the experience and competence necessary to complete the assignment; (ii) failing to provide an appraisal and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations; and (iii) failing to provide an appraisal and appraisal services that complied with standards applicable to the appraisal and appraisal industry.

30. Defendant had a contractual obligation to perform an appraisal based upon USPAP and existing state and federal statutes. Defendant failed to comply with those statutory and contractual obligations. As a result of such failure, Plaintiff has been damaged in the amount of $198,241.00 (original loan amount minus gross proceeds). Defendant was paid for such

appraisal, accepted the benefit of the contract and failed to comply with the actual and implied terms of providing an accurate appraisal.

31. Accordingly, Defendant has breached the actual and implied contract, and Plaintiff is entitled to its actual damages, and attorney's fees incurred herein.

**COUNT 2: Negligence**

32. Plaintiff adopts and incorporates by reference all of the above allegations, and further avers as follows:

33. Defendant provided the appraisal upon which this action is based, and upon which the underlying obligation was originated. Defendant and Plaintiff's Predecessor, from whom Plaintiff acquired all right, title and interest in such claims and causes of action, entered into an appraisal contract.

34. The actions of Defendant in, among other things, (i) failing to provide an appraisal and appraisal services that were prepared by Defendant with the experience and competence necessary to complete the assignment, (ii) failing to provide an appraisal and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations, and (iii) failing to provide an appraisal and appraisal services that complied with standards applicable to the appraisal and appraisal industry, were negligent.

35. As a direct result of such negligence, Plaintiff has suffered actual damages as set forth herein. Further, such actions were done with the expressed intent to provide false and misleading valuations on the appraised property. As a result of such negligence, Plaintiff has been damaged in the amount of $198,241.00 (original loan amount minus gross proceeds).

36. Further, Defendant's actions in failing to comply with industry standards and state

and federal statutes constitutes negligence, for which Defendant is liable to Plaintiff for actual damages.

### COUNT 3: Gross Negligence

37.     Plaintiff adopts and incorporates by reference all of the above allegations, and further avers as follows:

38.     Defendant provided the appraisal upon which this action is based, and upon which the underlying obligation was originated. Defendant and Plaintiff's Predecessor, from whom Plaintiff acquired all right, title and interest in such claims and causes of action, entered into an appraisal contract.

39.     The actions of Defendant in, among other things, (i) failing to provide an appraisal and appraisal services that were prepared by Defendant with the experience and competence necessary to complete the assignment, (ii) failing to provide an appraisal and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations, and (iii) failing to provide an appraisal and appraisal services that complied with standards applicable to the appraisal and appraisal industry, were negligent and grossly negligent.

40.     As a direct result of such negligence, Plaintiff has suffered actual damages as set forth herein. Further, such actions were done knowingly and intentionally, with the expressed intent to provide false and misleading valuations on the appraised property. As a result of such negligence, Plaintiff has been damaged in amount of $198,241.00 (original loan amount minus gross proceeds).

41.     Further, Defendant's actions in failing to comply with industry standards and state

and federal statutes constitutes gross negligence, for which Defendant is liable to Plaintiff for actual and exemplary damages.

**COUNT 4: Fraud**

42. Plaintiff adopts and incorporates by reference all of the above allegations, and further avers as follows:

43. Defendant provided the appraisal upon which this action is based, and upon which the underlying obligation was originated. Defendant and Plaintiff's Predecessor, from whom Plaintiff acquired all right, title and interest in such claims and causes of action, entered into an appraisal contract.

44. The Defendant's grossly inaccurate appraisal constitutes a false representation of material facts.

45. The Defendant knew, or at the very least should have known, that Plaintiff's Predecessor, and ultimately Plaintiff, would rely on the false representations. Plaintiff's Predecessor did rely on the false representations in approving and funding a loan on the Real Property.

46. Further, such actions were done knowingly and intentionally, with the expressed intent to provide false and misleading valuations on the appraised property. As a direct result of such fraud, Plaintiff has been damaged in the amount of $198,241.00 (original loan amount minus gross proceeds).

47. As a direct result of such fraud, Plaintiff has suffered actual damages as set forth herein, for which Defendant is liable to Plaintiff for actual and exemplary damages.

**COUNT 5: Punitive Damages**

48.     Plaintiff adopts and incorporates by reference all of the above allegations, and further avers as follows:

49.     Defendant provided the grossly inaccurate appraisal upon which this action is based, and upon which the underlying obligation was originated.

50.     Defendant's conduct as described herein was committed intentionally or was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of persons exposed to such conduct, such as Plaintiff, thereby entitling Plaintiff to punitive damages in accordance with Florida law so as to punish Defendant and deter it from similar conduct in the future.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all counts so triable before this Court.

### *Prayer*

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Court cite Defendant to appear and, upon final hearing, enter judgment in favor of Plaintiff and award Plaintiff its actual damages as shown herein, exemplary damages, attorney's fees, pre- and post-judgment interest, costs and expenses incurred, and any further relief which Plaintiff may show itself entitled to at law or equity.

Dated:     September 24, 2015                     Respectfully submitted,

/s/ *signature*
_____
KRISTIAN RASMUSSEN
CORY WATSON, P.C.
Florida Bar No.: 0229430
2131 Magnolia Avenue
Birmingham, Alabama  35205
P:  (205) 328-2200
F:  (205) 324-7896
AND

s/ ERNEST CORY
Alabama Bar No.:  ASB-2279-Y83E
NINA M. TOWLE
Alabama Bar No.:  ASB-5584-C54F
2131 Magnolia Avenue
Birmingham, Alabama  35205
P:  (205) 328-2200
F:  (205) 324-7896
ecory@corywatson.com

ATTORNEYS FOR PLAINTIFF